IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| John E. Reese, III, | ) | Case No. 3:22-cv-03645-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Daniel L. Hodges; Transform-X, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendant Transform-X, Inc. ("Transform-X")'s motion for setoff of amounts received by Plaintiff in settlement with former Defendant COMSovereign Holding Corp. ("COMS"). [Doc. 99.] The motion has been fully briefed [Docs. 102; 105] and is ripe for review. For the reasons discussed below, Transform-X's motion for setoff is granted.

## BACKGROUND

Plaintiff filed this action in the Richland County Court of Common Pleas on May 27, 2022 [Doc. 1-1], and Defendants removed the action to this Court on October 20, 2022 [Docs. 1; 1-2]. The suit arises out of a December 13, 2018, promissory note (the "Note") evidencing a loan from Plaintiff to Transform-X in the original principal amount of $125,000.00. [Doc. 1-1 at 4 ¶ 5; *see* Doc. 25-2.] The Note was to mature and be due and payable on the sooner of 180 days from December 13, 2018, an event of investment in Transform-X by an outside source exceeding $5,000,000, or the voluntary conversion of the outstanding principal and interest into common stock of Transform-X at a rate of $7 per share plus eight percent interest. [Doc. 25-2 at 2 ¶ 1.] The Note was executed by Defendant Daniel L. Hodges, as CEO of Transform-X. [*Id.* at 3.]

On February 28, 2019, Transform-X entered into a Purchase and Sale Agreement with ComSovereign Corp. and others. [Doc. 28-4.] In exchange for acquiring Transform-X, ComSovereign Corp. agreed to give shares of its restricted common stock to Transform-X shareholders. [*Id.* at 3 § 1.03.] Transform-X notified its shareholders of the transaction in a letter dated March 8, 2019. [Doc. 28-6.]

Then, on November 27, 2019, COMS entered into an Agreement and Plan of Merger with ComSovereign Corp. in which ComSovereign Corp. became a subsidiary of COMS. [*See* Doc. 28-7 at 3 § 2.01 (describing merger in which ComSovereign Corp. became a subsidiary of Drone Aviation Holding Corp.), 9 § 5.07 (indicating that Drone Aviation Holding Corp. had changed its name to COMS).]

Ultimately, the Note matured and was not paid, and Plaintiff filed this action asserting causes of action against Hodges, Transform-X, and COMS for violation of the South Carolina securities laws; against Transform-X and COMS for liability on the Note; and against Hodges for wrongful distribution. [Doc. 1-1 at 7 ¶¶ 21–26.] On April 4, 2024, Plaintiff notified the Court that he had conditionally settled with COMS, and COMS was dismissed from the action with prejudice on April 23, 2024. [Docs. 57; 59.]

On February 4, 2025, Plaintiff, Transform-X, and Hodges proceeded to trial on the claims against Hodges and Transform-X for violation of the South Carolina securities laws and against Transform-X for liability on the Note. [*See* Docs. 87; 88; 90.] At the conclusion of Defendants' case, Plaintiff moved for judgment as a matter of law on his claim against Transform-X for liability under the Note, and the Court granted Plaintiff's

motion.[1]  [*See* Doc. 90.]   The jury then found that neither Transform-X nor Hodges violated the South Carolina securities laws.  [Docs. 94; 95.]

## DISCUSSION

As noted, Transform-X asks the Court to offset the amounts received by Plaintiff in his settlement with COMS against the judgment to be entered against Transform-X.  [Doc. 99.]  The terms of Plaintiff's settlement agreement with COMS provided that COMS would pay $20,000 to Plaintiff; execute, and cause ComSovereign Corp. to execute, a promissory note to Plaintiff for the principal sum of $170,000; and order its transfer agent to issue to Plaintiff restricted shares of COMS's stock worth $50,000.  [Doc. 99-1 at 1 § 1, 5–8.]  Accordingly, Transform-X seeks to have its damages reduced by $70,000 for the cash and stock Plaintiff received in settling with COMS and asks that the judgment state that it will be further reduced by any payments Plaintiff received related to the $170,000 promissory note.  [Doc. 99 at 4; *see also* Doc. 105 at 4–5.]

Plaintiff opposes Transform-X's motion, arguing that no authority supports reducing a verdict or judgment unless specific statutory authority provides for the reduction or the reduction is specifically supported by the jurisdiction's common law of tort; that the South Carolina law cited by Transform-X is inapposite because they are tort cases governed by the Contribution Among Tortfeasors Act; that the Arizona law cited by Transform-X is inapposite because the Arizona statute applies only where the settling and non-settling defendants are liable in tort for the same injury; that Transform-X never pled reduction, setoff, or contribution; that the authorities cited by Transform-X apply only to substantial money actually paid; and that Transform-X did not timely seek to amend,

---

[1] During the trial, Transform-X did not dispute its obligation on the Note.

3

timely seek to present the details of the settlement to the jury as factfinder or object to not being allowed to do so, timely raise offset, or timely seek a hearing on the COMS settlement or its details. [Doc. 102 at 15–22.]

The Court first addresses the issue of what law to apply. Neither party takes an affirmative position regarding what law governs the Court's analysis concerning the instant motion. [*See generally* Docs. 99; 102; 105 (all addressing both South Carolina and Arizona law).] In a diversity suit, federal courts must apply the law of the forum state. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (D.S.C. 2007); *see Livingston v. Atl. Coast Line R.R. Co.*, 180 S.E. 343, 345 (S.C. 1935) ("[U]nless there be something intrinsic in, or extrinsic of, the contract that another place of enforcement was intended, the lex loci contractu governs."). In the instant case, the Note indicates that it is "governed, construed and interpreted in accordance with the laws of the State of Arizona." [Doc. 25-2 at 3 ¶ 5.] Accordingly, the Court must apply Arizona law regarding reduction of damages. *See Grant Thornton, LLP v. Fed. Deposit Ins. Corp.*, 435 F. App'x 188, 201–05 (4th Cir. 2011) (applying West Virginia law to the calculation of a settlement credit); *Antero Res., Corp. v. C&R Downhole Drilling Inc.*, 85 F.4th 741, 748 (5th Cir. 2023) (explaining that Texas law applied to a determination of whether a defendant was entitled to settlement credit); *cf. Sun Chems. Trading Corp. v. SGS Control Servs., Inc.*, 159 F. App'x 459, 461–64 (4th Cir. 2005) (applying North Carolina's one-satisfaction doctrine when concluding that the district court

4

did not err in dismissing a plaintiff's claims against a defendant because an arbitration award against another defendant had compensated plaintiffs for all of their injuries).

Under Arizona law, where a plaintiff seeks to recover damages arising out of one incident or transaction and alleges an alternate theory of recovery as to each of several defendants, "a settlement by one or more of the defendants is to be credited against any judgment rendered against the defendant who is held liable." *Am. Home Assur. Co. v. Vaughn*, 517 P.2d 1083, 1086 (Ariz. Ct. App. 1974); *see also Pasco Indus. v. Talco Recycling, Inc.*, 985 P.2d 535, 550 (Ariz. Ct. App. 1998) (concluding that the trial court had correctly applied a settlement amount against a jury verdict in favor of the plaintiff where the plaintiff sought to recover damages based on one injury).  Moreover, Arizona courts apply this doctrine regardless of whether the causes of action sound in contract or in tort.[2]  *Am. Home Assur. Co.*, 517 P.2d at 1085 ("The effect of a settlement by one defendant when multiple defendants are involved should not turn upon whether the defendants are sued in contract or in tort. . . . In our opinion, the crucial question to be asked . . . is whether the damages stem from the same incident or transaction.  In other words, is plaintiff suing several defendants to redress one wrong which he has suffered, or is he suing to redress a series of wrongs with different defendants responsible for different wrongs?"); *see also Pasco*, 985 P.2d at 550 (applying the doctrine to a breach

---

[2] The same would be true if South Carolina law applied because "South Carolina courts have consistently held there can be only one satisfaction for an injury or wrong." *Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. IMK Dev. Co.*, 866 S.E.2d 542, 555 (S.C. 2021) (internal quotation marks omitted); *see id.* at 556 (concluding that setoff could be applied to a breach of warranty award and explaining that "nothing in the [Uniform Contribution Among Tortfeasors] Act prohibits the application of common law setoff to a claim founded in contract").

5

of contract claim). Accordingly, the Court concludes that Transform-X is entitled to a reduction of the damages it owes to Plaintiff for its liability under the Note based on Plaintiff's settlement with COMS for the same injury.[3]

As noted, pursuant to Plaintiff's settlement with COMS, Plaintiff received $20,000, restricted shares of COMS's stock worth $50,000, and a promissory note for the principal sum of $170,000. [Doc. 99-1 at 1 § 1, 5–8.] Accordingly, the Court concludes that Transform-X's damages should be reduced by $70,000 for the cash and stock Plaintiff

---

[3] Indeed, although Plaintiff alleges entitlement to alternative remedies, the only *injury* alleged in the Complaint is his failure to receive payment and interest on the Note. [*See generally* Doc. 1-1.] Plaintiff argues that Transform-X's damages should not be reduced because it did not plead reduction, setoff, or contribution; timely seek to amend; present the details of the settlement to the jury as factfinder or object to not being allowed to do so; raise offset; or seek a hearing on the COMS settlement or its details. [Doc. 102 at 20, 21–22.] The Court disagrees. Plaintiff fails to direct the Court to any authority supporting his position that a defendant must plead entitlement to a reduction of damages based on settlement with another defendant. And the Court's independent research has uncovered none. Nor has Plaintiff directed the Court to any authority requiring that the details of the settlement be presented to the jury or that a court hold a hearing regarding a settlement before determining whether to reduce damages based on the settlement. Here, the Court specifically instructed the jurors not to concern themselves about Plaintiff being compensated twice for the same set of facts or about interest, costs, attorneys' fees, or testimony regarding prior settlement. [*See* Doc. 91 at 9.] The Court further instructed the jury that it would act after the jury returned its verdicts to ensure there was no double recovery. [*Id.*] As the Fourth Circuit Court of Appeals has noted, the idea that a plaintiff is entitled to only one satisfaction for each injury is an "equitable doctrine [that] operates to reduce a plaintiff's recovery from the nonsettling defendant to prevent the plaintiff from recovering twice from the same assessment of liability." *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 737 (4th Cir. 2000). Particularly in a case like this where the damages are based on a single promissory note with plain and unambiguous terms, the Court granted judgment as a matter of law on the claim for liability on the Note, and the reduction of damages is based on a single settlement agreement, the Court is well equipped to determine how to reduce Plaintiff's damages based on his settlement with COMS.

received in settling with COMS[4] and by the amount of any payments Plaintiff has received related to the $170,000 promissory note.[5]

## CONCLUSION

Based upon the foregoing, Transform-X's motion for setoff of amounts received by Plaintiff in settlement with COMS [Doc. 99] is GRANTED. Transform-X's damages will be reduced by $70,000 and by the amount of any payments Plaintiff has received related to the $170,000 promissory note. Plaintiff shall file a status report by February 18, 2026, informing the Court of the amount of all payments he received in connection with the $170,000 promissory note issued as part of his settlement with COMS. The Court will enter a final judgment after the status report is filed and the Court has determined the

---

[4] Plaintiff contends that even if Transform-X is entitled to a reduction of damages, the reduction should be limited to the $20,000 actually paid. [Doc. 102 at 20–21.] Plaintiff bases this argument in part on his position that the shares of stock he received were worth only $657.89 on February 25, 2025. [*Id.* at 14; *see* Doc. 102-2.] However, based on the terms of the settlement agreement, COMS issued to Plaintiff restricted shares of its common stock that were worth $50,000 as of the settlement date. [Doc. 99-1 at 1 ¶ 1.3.] Plaintiff does not contend that COMS failed to issue the stock and instead merely argues that the stock is no longer worth $50,000. The Court knows of no reason why the stock's change in value since the settlement—whether by increasing or decreasing—should impact whether and by how much it would reduce Transform-X's damages given that Plaintiff received the stock that was worth $50,000 at the time of settlement.

Moreover, to the extent Plaintiff argues that the settlement agreement itself does not include a stipulation of COMS' liability or allocate settlement to any particular claim [Doc. 102 at 21], the Court knows of no reason these omissions should impact a reduction of damages. As noted, under Arizona law, the question is whether Plaintiff is suing multiple defendants to address the same wrong. *See Am. Home Assur. Co.*, 517 P.2d at 1085. That is exactly what Plaintiff has done in this case, and he specifically alleged in the Complaint that COMS and Transform-X are jointly liable for his injury. [*See generally* Doc. 1-1.]

[5] The $170,000 promissory note matured in October 2025. [*See* Doc. 99-1 at 5.] Accordingly, Plaintiff shall file a status report by February 18, 2026, informing the Court of the amount of all payments he received in connection with the $170,000 promissory note that was issued as part of his settlement with COMS.

appropriate amounts for prejudgment interest and legal expenses, as addressed in a separate Opinion and Order filed contemporaneously herewith.

    IT IS SO ORDERED.

<u>s/ Jacquelyn D. Austin</u>
United States District Judge

February 11, 2026
Greenville, South Carolina